## Case No. 9,056.

### MANY v. SIZER et al.

[1 Fish. Pat. Cas. 17.] [1]

Circuit Court, D. Massachusetts. Jan., 1849.

PATENTS—PRIORITY—EXPERIMENT— COMBINATION OF KNOWN PARTS — AMOUNT OF LABOR INVOLVED—GREATER UTILITY—CAR WHEELS.

1. Experiment, alone, is not sufficient to constitute priority of invention; the article must be completed for public use.

2. The conception of the idea and an attempt to produce it, ending in unsuccessful experiment, can not defeat a subsequent patent.

3. If the patentee borrowed the idea of the different parts which go to constitute his invention, and for the first time brought them together into one whole, which is materially different from any whole that existed before, he is the original and first inventor.

4. It is of no consequence how much or how little labor, study or thought the invention cost, if it is to be really a new and useful invention.

5. Superior utility in the defendant's is evidence that some new principle, or mechanical power, or new mode of operation, producing a new kind of result has been introduced, and the greater such utility, the stronger such evidence.

6. But this utility must be derived from the changes introduced, not from the use of better material or greater skill or care in the manufacture.

This was an action on the case, tried before Judge Sprague and a jury, for the infringement of letters patent [No. 640] granted to Trescott, Wolf, and Dougherty, March 17, 1848, and assigned to plaintiff [William V. Many], for a new and improved mode of constructing cast-iron wheels for railroad cars. The defendants [George W. Sizer and Henry Sizer] denied the validity of the patent, and the infringement; denying the validity of the patent because the invention was neither new nor useful. Upon these issues a large amount of testimony was introduced, the material portions of which are referred to in the charge of the court.

The specification accompanying the letters patent is as follows: "Be it known, that we, Samuel Trescott, George Wolf, and James Dougherty, of the borough of Columbia, in the county of Lancaster, and state of Pennsylvania, have invented a new and improved mode of constructing cast-iron wheels, for railroad cars, and for other purposes; and we do hereby declare that the following is a full and exact description thereof: We denominate our wheel the "double-plate car-wheel," because we use two plates instead of the spokes, or arms, usually employed, which plates are cast with the rim, and form one substance therewith; we give to the rim of our wheels the same form, in all respects, as is now given to the rim of car-wheels; but instead of arms, we cast our wheels with two parallel—or nearly parallel—plates, which plates are convex on one side and concave on the other; the hub, or nave which is to receive the axle, is cast in the center of these plates, extending from one of them to the other; the accompanying drawing gives a sectional view of one of our wheels, "a a" being the rim, "b b" the front and back plates, convex on one side, and concave on the other; "c c" being the hollow or void space between them, and "d d" the nave or hub; the hollow, "c c," between the two plates, is formed by a core, in the process of casting, which core is supported in the flask by leaving suitable holes in the plates for that purpose, which holes serve for the removal of the sand of which the core is formed. We cast our rim in a chill, in the usual manner; and, in consequence of the particular form given to the plates, they contract in cooling; without danger of fracture, and without it being necessary to divide the hub, as is done when car-wheels are cast with spokes, or arms. The only effect of contraction is to flatten the two plates in a slight degree, operating, in this respect, like the curved arms of many cast-iron wheels. We are aware that car-wheels have been made with plates as a substitute for arms, but such plates have been made separate from the wheels, and united together by screwed bolts, embracing the hub in a distinct piece between them. The difference between such wheels and those constructed by us, is so obvious as not to need pointing out. What we claim as our invention, and wish to secure by letters patent, is the manner of constructing wheels for railroad cars, or for other purposes to which they may be applied, with double-curved plates, one convex outward, the other inward, and an undivided hub, the whole cast in one piece, as herein fully set forth. Samuel Trescott, George Wolf, James Dougherty."

B. R. Curtis, for plaintiff.

A. McArthur and R. Choate, for defendants.

SPRAGUE, District Judge (charging jury). There are several things required by the patent laws of the United States to entitle an inventor to a patent. He must be the original and first inventor, and the thing patented must be useful. The letters patent are prima facie evidence of both these points, and are sufficient, in the first instance, to entitle the party holding them to maintain a suit for an infringement. Then, if the validity of the patent be contested, the burden of proof is on the defendant. In this instance, the defendants allege two grounds on which they say the plaintiff's patent is invalid. First, that the original patentees were not the first inventors; that though they might have been original, they were not the first. They must be the first, as well as original inventors; for if the thing they produce existed before, though they might have been ignorant of it, they can not take and hold any exclusive right to what before was public property.

The first question, then, is one of pri-

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

ority of invention. Several wheels have been produced and exhibited to you by the defendants, and it is for you to say whether any of them is substantially the same in principal as the plaintiff's, and if so, whether it existed before his patent. And here comes the question, what is the plaintiff's patent? He claims a thing, as a whole; it is made up of several things, or parts, but the claim, after all, is for a whole. In that whole are embraced the several things of which you have heard so much during the trial—the chilled rim, the solid hub, the two curved plates, all cast at once, and forming one substance, one thing, one manufacture, for one use; it is to be taken as a whole, and if you find that as a whole it existed before, then his claim is not valid.

Now, it is necessary to look at the various wheels put in evidence. First, the Elgar wheel, which is a patented article. It is not alleged that in substance this is the same as the plaintiff's, but it has been introduced to show that it has some of its features, and that he has borrowed from it some of his ideas. It has two plates, not of cast-iron, but of wrought-iron, which were screwed or bolted to the rim and hub. In these respects there is a difference between it and the plaintiff's wheel, and this difference is adverted to in the specification of the plaintiff himself.

But I ought, before going any farther, to say to you, that when I state the peculiarities of these different wheels, or any other matter of fact, you are not to take the statement of fact from me; it is your exclusive privilege and duty to judge of all questions of fact.

Then, second, there is the Dunham wheel. Mr. Dunham himself has been on the stand before you. In his wheel, he had double plates to a certain extent; but they did not reach from the rim to the hub; instead of continuous plates, he employed them only for a portion of the distance, and used spokes for the rest; if that does not constitute two plates, connecting the hub and the rim, then it is not substantially the same as the plaintiff's.

Another wheel is that by Baldwin. That, you will recollect, was a double-plate cast-iron wheel; you will also remember, from the statements of the witnesses, that two only of them were cast, and then the manufacture was abandoned, because this wheel did not prove to be a good article. If, with respect to this wheel, you believe the evidence of the witness, Mr. Baldwin's foreman, who superintended the casting, that the plates were not curved so as to embrace the principle of compensation, that is, if they had not such a form given to them as to allow of contraction, without fracture, in the process of cooling—if that was wanting in the Baldwin wheel, then it is not substantially the same as the plaintiff's.

Then, again, there is the Tiers wheel. The deposition of Mr. Tiers has been produced, and he states that his wheel had spokes, or arms, between his plates, and he says that, after trying experiments, he abandoned the manufacture; now experiment, alone, is not sufficient to constitute priority of invention. The article must be completed for public use, and the result must be known, although it is not necessary that it should be actually used by the public; the question is, whether the thing patented was before known? The conception of the idea, and the attempt to produce it, ending in unsuccessful experiment, is not sufficient to defeat a subsequent patent.

Now, there is still another wheel offered in evidence—the James wheel. You will recollect that it has one convex plate, with nothing to prevent a sufficient contraction in cooling. The question is, does that wheel, with its single convex plate, contain all the material parts of the Wolf wheel? The plaintiff alleges that he has introduced a second plate; if the second plate introduced by the plaintiff operates as a brace or truss to support the rim and hub, and thus introduces a new principle, or mechanical power, then the plaintiff's is not substantially the same as the James wheel.

These are all the single and separate wheels introduced by the defendants. I have adverted to them briefly; but you will remember, doubtless, all the peculiarities of their construction and principle.

But then comes this second question: If neither of these wheels, taken separately, will defeat the plaintiff's patent, will they all together? It is contended by the defendants, that all the parts going to constitute the plaintiff's wheel, were known before, and developed in prior wheels.

But if the patentee borrowed the idea of the different parts which go to constitute his wheel, and for the first time brought them together, into one whole, and that whole is materially different from any whole that existed before, then he is the original and first inventor, and is entitled to a patent therefor.

I have been requested to instruct you that it is of no consequence, as to the validity of a patent, how much, or how little labor, study, or thought the invention cost. And, gentlemen, this is so, if it be really a new and useful invention. The degree of labor and thought may be sometimes evidence to the jury, upon the question of invention; but although the invention be accidental, or a sudden flash of thought, the party is entitled to the benefit of his discovery.

I have also been requested to state, that it makes no difference as to the validity of a patent, if the same article or production was known before, whether such prior production or article was patented or not; and such undoubtedly is the law, as you must have seen from the directions already given you.

The next question that arises is that of

utility; the statute requires the invention to be useful. The law does not say that it must be highly useful, or more useful than others: it must have some degree of utility, and that is all that is required. I have been requested to instruct you that an article can not be considered useful if it endangers human life, or is so expensive that manufacturers would not be induced to make it. Those may be very important considerations for you to take into view, but they are not necessarily conclusive; and you will determine, from a consideration of all the evidence, whether the invention is, upon the whole, a useful one.

Another question is: Whether the description given in the patentee's specification is sufficient to enable a skillful artisan to make the wheel from it? The description must be such as to enable a person skilled in the art to which the invention pertains, to make the thing patented in such a manner that it will be useful.

I next proceed to another, and perhaps I may say, the great question in this case, which has been argued very ably by the counsel on both sides. It is: Whether the defendants have infringed the plaintiff's patent? Now, the defendant himself has a patent for his wheel, and that patent is prima facie evidence that the wheel is his invention; that it is new and original in him, and the burden of proof is on the plaintiff to satisfy you that the defendant has infringed his patent. The defendant's patent being subsequent, can not operate to defeat the plaintiff's, if it be for substantially the same thing. The question is: Whether the article actually made by the defendants is substantially the same as that patented by the plaintiff? There is no dispute as to what is actually made by the one party and by the other. The things and productions of both the plaintiff and defendants are before you, as they have been actually constructed. You have the means of comparing them. The burden of proof, as I have said, in this respect. is on the plaintiff. He must prove, beyond a reasonable doubt, that the defendants have infringed his right. And the question is: Whether the article made by the defendants is substantially the same as that of the plaintiff? This is a matter of fact, and exclusively for your determination.

But here it becomes necessary to ascertain, with more precision, what is claimed and secured by the plaintiff's patent.

It is insisted, on the part of the defendant, that the plaintiff is restricted to the degree of curvature described in the drawing annexed to his specification. But the drawing is only an illustration, and the patentee is not limited to the degree of curvature therein represented. The plates are described, in the plaintiff's patent, as convex: and the question is: Whether they must be curved as wholes—that is, from rim to rim—or whether the curvature may be between hub and rim? It is contended by the plaintiff, that the drawing shows that the inner plate is struck from two centers, making some degree of curvature between hub and rim, subordinate to the general convexity. If this be so, and the curvature of the arms of some cast-iron wheels was previously well known to be between hub and rim, then I instruct you that the plaintiff is not confined to curvature between rim and rim, but that curvature between hub and rim is within his patent.

Another question relates to the arrangement of the plates. In the plaintiff's specification they are described as parallel, or nearly so, and the summing up states them to be: one convex outward, and the other inward; and it is insisted by the defendant, that the plaintiff is confined to that arrangement. But I feel bound to instruct you that such is not the law, and that the plaintiff is not restricted to plates that are curved or convexed in the same direction, but that his patent may cover plates, both curved inward or both curved outward, as well as those which are parallel, or nearly so.

Taking these views of the plaintiff's patent, you will come to the examination of the wheel made by the defendant, and see whether it is substantially the same. If the defendants have omitted any one material part found in the plaintiff's wheel, then their wheel is not the plaintiff's, and is not an infringement. They allege that they omit altogether the plates of plaintiff, and substitute others, materially different, and that is the question for you to examine and decide.

It is contended by the defendants, that if a person of competent skill could not, from the description given by the plaintiff, make a wheel like the defendants', then the plaintiff cannot prevail in this action. And this proposition is true, when properly understood. It is not necessary that one skilled in the art should be able, from the plaintiff's description, to make a wheel in the form of the defendants', but it is necessary that he should be able to make one substantially like the defendants'. For, if he could not, it would follow, either that the thing patented could not, from the description given by the patentee, be made by a person of competent skill. or that, when made, it would be substantially different from the defendants'. and in such case, the plaintiff could not maintain this action. But this still brings us back to the question, whether the defendants' wheel is substantially the same as the plaintiff's. The defendants have introduced certain changes in the plates and their arrangement. If these are only changes of form and proportions of the thing patented—as described and set forth in the patent. without introducing any new principle or mechanical power, or new mode of operation producing a new kind of result—the defendants' wheel would, notwithstanding these changes, be an infringement of the plain-

tiff's patent. But, if by such changes of form and arrangement, the defendant has introduced any new principle, or mechanical power, or has introduced a new mode of operation, producing a new kind of result, he has not infringed the plaintiff's patent.

If the changes made by the defendant have rendered his wheel one of greater utility than the plaintiff's, such utility is evidence that some new principle, or mechanical power, or new mode of operation, producing a new kind of result, has been introduced. And the greater such utility, the stronger is such evidence. And if a manifest and very high degree of utility is obtained by such changes, it becomes full proof and conclusive, that a new principle or mechanical power, or new mode of operation, producing a new kind of result, has been introduced, and that the defendants' wheel is no infringement.

There has been much evidence before you upon these points. You have the opinions of gentlemen of science and skill, of experts conversant with this particular art, upon this question, and also many detailed facts from those acquainted with the operation of the two wheels. You are to decide upon all this matter by exercising your own judgment upon the facts and reasonings submitted to you. You have another kind of evidence upon which you are also to pass, and that is the proof of the effect of both these productions when put to practical use.

Now, gentlemen, the opinion of experts—contrary to the general principle of law, which excludes opinions from going to a jury as evidence—is admissible in cases like this; cases involving questions of science and artistical skill, in which it is presumable that the jury are not versed, and with regard to which, therefore, they may desire the aid of other persons, skillful and versed in the art or science in question. Hence it is, that the results which such skillful and accomplished persons have arrived at, in their own minds, are suffered to go to the jury as matters of evidence. But they are not to be held as conclusive. They are to be judged of by you, and weighed by you, in the same manner as all the other evidence in the case.

And with regard to this matter, the plaintiff insists that the weight of evidence from the experts is on his side. The defendants, on the other hand, contend that it is clearly on theirs. It is for you to examine the testimony, and consider which side is entitled to be regarded as having the preponderance:

It is insisted, also, by the defendants, that the plaintiff's experts have given an explanation to the meaning they attach to the term "principle," which destroys the force of the opinion they have given as to the defendants' wheel being the same in principle with the plaintiff's; because, they say, it might require skill, ingenuity, thought, and experiment to arrive at the defendants' wheel from the plaintiff's description. Now, it may be that thought and experiment would arrive at something substantially different from the plaintiff's, and it may be that they would produce an article substantially the same, though formally different; and, it may be again, that much ingenuity, thought, experiment, and study may be employed to prevent a similitude in form, although the principle be the same, and so evade the patent.

Besides the opinions of the experts, you have the reasons given by them for such opinions, and the theories and deductions urged by the counsel. All agree that in casting a wheel in a chill, the first effect is a contraction of the rim, diminishing the circumference of the wheel, and thus producing a pressure upon the plates, which, in their heated state, causes them to yield, so as, in the first instance, to increase the curvature, and afterward, by the cooling of the interior, the curvature is reduced so as to be somewhat nearer a straight line than it was originally. The defendants contend that, by the contraction of the rim in the chill, the hub of the plaintiff's wheel rises; and that in the defendants' does not, and that this constitutes a material difference between them. The plaintiff insists that the hub of the defendants' wheel also rises, by the contraction of the rim in casting, and that if it were otherwise, still that would constitute no difference of principle. That the hub, or center of the plaintiff's plates rises, in the first instance, in the process of casting, there is no doubt, although at first it was controverted. Is it the same with the defendants'?

To this point you have the testimony of persons who have cast the wheel, and of others who have made the experiment for the purpose of determining this question; and models prepared with screws, for the purpose of illustrating the effect of the first contraction in casting the two wheels; and also the testimony and reasoning as to the necessary effect of the pressure by such contraction, upon the plates of the form used by the defendants.

It is urged by the plaintiff, that, although most of the curvature in the defendant's wheel is between hub and rim, yet there is what may be denominated a general curvature between rim and rim, and that this last curvature is in the same direction in both plates; so that when the contraction of the rim presses upon the mass of metal constituting the plates, such pressure is not in a straight line between rim and rim, and therefore the center of both plates is necessarily pressed upward, in a greater or less degree, although a part of such pressure may be exhausted upon the subordinate curves between hub and rim. The defendant, on the other hand, insists that there is no such general curvature, and the only effect of the contraction of the rim is to increase the curvature between hub and rim. It is for you to determine, upon all the evidence, whether there be a difference in this respect between the two wheels, and if so, whether it be material.

The curvature of the plates is also necessary, and perhaps even more important, to obviate the danger arising from the contraction of the interior portions of the wheel in cooling, which diminishes the curves, and eventually renders them somewhat less than they were as originally molded. There is no doubt that in this process the hub, or center of the plaintiff's plates, is depressed; but it is controverted whether such is the effect upon the defendants' plates. And upon this point, as well as upon the question of its materiality, you have the same evidence as upon the effect of the first contraction by chilling the rim.

Then, gentlemen, there is another question. It is said that the defendant obtains a distinct advantage, to which, indeed, his patent particularly adverts, by relieving the core in casting so that it need not be removed until the metal is cold. There is no evidence that the core of the plaintiff's wheel was, in fact, ever removed until it was cold, or that its remaining in has proved injurious. But it is urged by the defendant that some injury must have necessarily resulted, because, from the form of the plaintiff's wheel, the whole space between the two plates is at first filled by the core; and that this space being diminished by contraction in cooling, causes an injurious pressure; whereas, the effect of the same contraction upon the defendants' plates would be to increase the space between them, and thus relieve the core. This is denied by the plaintiff, who insists that the first contraction diminishes the space between the defendants' plates much more than any part of the process does the space between the plaintiff's.

There is another distinct species of evidence worthy of your deliberate consideration, and that is the practical effect produced by the changes introduced by the defendant. If the effect is a wheel of greater utility, that is evidence tending to show that some new principle, or mechanical power, or mode of operation, producing a new kind of result, has been introduced; and the higher the degree of utility, the stronger is such evidence. And it may arise to so high a degree as to become conclusive. From our inability to penetrate the secrets of nature, we may not be able to detect the new principle, or power, otherwise than by its effects. But this utility must be derived from the changes introduced—not from the use of better material, or greater skill or care in the manufacture.

Under this head, your first inquiry will be, whether the defendants' wheel is, in fact, superior to the plaintiff's? And if you find that it is, you will next consider whether such superiority is attributable to the changes introduced by the defendant, or to better material, and greater care and skill, or partly to one and partly to the other, and how much to each.

It is in evidence that about eleven hundred wheels were made by the patentees, from the date of their patent in 1838 to the year 1843, which were put upon the Pennsylvania railroads, and that some two hundred of them still continue in use.

And the plaintiff, moreover, insists that railroads, as they were constructed ten years ago, gave a more severe trial to wheels than they do as now built. It is further urged by him, that if any wheel has stood the test of every use, that fact should satisfy you that the article is a good one. And it is maintained, if one wheel can be made from a particular pattern, to stand the test of severe use, another wheel, or any number, can be made from the same pattern, equally good, with sufficient care and skill.

On the other side, it is insisted, that the Wolf wheels, as they were constructed, were bad; that they broke, and were, in fact, a worthless article, and that no one ever made a second purchase of them, but that the old spoke wheels were always substituted for those that failed; and that, with respect to the two wheels exhibited to you as having been run for several years, nobody knows to what use they were put, nor to what trial they were subjected. And again, it is added, that the patentees abandoned the manufacture of the Wolf wheel, and went back to the old cast-iron spoke wheel. This, the defendants contend, is of itself evidence which should satisfy you that the Wolf wheel is worthless. On the other hand, you have the deposition of Mr. Wolf himself, stating that the only reason why he abandoned the manufacture of his wheel was, that he could not procure the proper kind and quality of iron.

With regard to the second period of this wheel, as the counsel have designated it for convenience, it appears that in 1847 the plaintiff himself, at Albany, employed Messrs. Jagger, Treadwell and Perry to manufacture his wheel under his own supervision. The defendant contends that the attempt was a failure. The plaintiff contends that it was successful. One party says that the manufacture was given up because it was not successful, and because the wheel was not useful. The other maintains that that was not the reason for discontinuing the manufacture, but the reason was the want of suitable material. You have had the testimony from both sides before you upon this point. On the one hand, it is insisted that the most perfect opportunity was afforded for a successful production of the plaintiff's wheel; that the utmost care and skill were used in making it, and that the very best material was employed, and that this too, was frequently under the personal inspection of the plaintiff. But the other side contends that the testimony of the witnesses to these things should be taken with much allowance, especially so with regard to the evidence of Mr. Treadwell, who occupies an antagonistic position to the plaintiff.

Mr. Treadwell is the defendant, at Albany, in a suit brought for the infringement of this

very patent. And standing in that position, it is urged that he has such an interest in the question, although not in this suit, that he must be biased. Mr. Kibbee, too, being in his employment, it is said, must be also under a bias. But then, on the other hand, it is stated that the plaintiff complained to the manufacturers of the quality of iron used, and it was changed, at his request. As to the quality of the iron, gentlemen, and the allegation that Treadwell & Co. did not use a proper material, you have the testimony of several witnesses, who state that, in the wheels made in 1847, or at least in that specimen of them which you have seen in the entry of the court-room, the iron was not of a suitable quality for railroad wheels.

You will satisfy yourselves, in the first place, whether the plaintiff manufactured a good wheel or not; and, in the second place, whether, if the manufacture did not turn out to be good, the fault was owing to the form of the plates, or to the inferiority of the material employed. And you are to judge in the same way concerning the defendants' production. You are to look at the tests by which it has been tried, the use to which it has been subjected, the number called for and made, and the various other circumstances in the case, which it is not necessary here to recapitulate. The witnesses from Springfield, produced by the defendant, have testified that some two thousand Sizer wheels were manufactured and sold, for use upon railroads, and that they have not known any of them to be returned. On the other hand, it is contended by the plaintiff, that with the present improved mode of constructing railroads, the strain, or test, or car-wheels is now not nearly so severe as it formerly was; and moreover, in fact, that several of the Sizer wheels upon the Old Colony road have failed. All this is a matter for your consideration.

I have been requested by the defendants to instruct you that the plaintiff's specification and description must be so clear and intelligible as to enable an artisan to make the patented wheel without any new invention or exercise of inventive power. This is so. But you must understand that it is only required of an inventor so to describe the article for which he seeks a patent, as that a person skilled in the particular art relating to it, can construct the fabric from the description, by the exercise of his skill as an artisan—not that it must be so described that a person unacquainted with, or unskilled in the art, may be enabled to produce it.

The only other question, gentlemen, in this case, is that of damages. If your verdict should be in favor of the defendants, this question will not arise. But if you should be of opinion that the plaintiff is entitled to a verdict, then you will have to determine the amount, which should be such as would indemnify the plaintiff for the injury he has sustained from the defendants' violation of his patent. The number of wheels which the defendant has made, and the amount of profit he has realized from them, have been presented to you by the plaintiff, as grounds of damages. They are proper to be taken into consideration, but are not conclusive as to the extent of the injury, which may be either greater or less than the profits realized by the defendants. A plaintiff may be manufacturing his patented article himself, and making it to a profit, while another man may make it to a disadvantage, and yet the spurious article carried into the market may displace the original. In such case, the injury to the patentee would be greater than any profit upon the spurious production. On the other hand, a defendant's article may not displace the original, and in that case the injury would be less. And again, it may be that a plaintiff may derive a profit from licensing other parties to construct his invention; and any piracy upon it, by depriving him of a portion of the profits of such licenses, would be an injury to be taken into account by a jury.

If your verdict should be for the plaintiff, he is entitled to damages to the full extent of the injury he has sustained from the wrongful acts of the defendants.

The jury found a verdict for the plaintiff.

[NOTE. The judgment against the defendant was entered as follows: "It is thereupon considered by the court that the said William V. Many recover against the said George W. & Henry Sizer, the sum of $1,733.75 damages, and costs of suit taxed at ———." Subsequently the defendants sued out a writ of error from the supreme court, for the purpose of having the above judgment revised. The judgment of the circuit court was affirmed December, 1851; case unreported. Upon the receipt of the mandate issued by the supreme court, commanding such execution and proceedings be had in the cause as ought to be had, it was presented to the circuit court, and leave applied for to have the costs in the action taxed and inserted in the blank left in the original record of the judgment. This motion was refused, and plaintiff thereupon applied to the supreme court for a mandamus to direct the circuit court to tax and allow his costs in the original action, amounting to $1,811.-59. The motion was overruled for want of jurisdiction. 14 How. (55 U. S.) 24. Judgment having been entered on the original verdict, the case was carried by writ of error to the supreme court, where it was dismissed for want of jurisdiction. 16 How. (57 U. S.) 98.

[This cause was heard on a motion for a provisional injunction in June, 1849, founded upon the verdict in this case. The injunction was refused. Case No. 9,057.

[For another case involving this patent see Many v. Jagger, Case No. 9,055.]